**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
HEARTLAND PAYMENT SYSTEMS, INC.,  :
                                  :   CIVIL ACTION NO. 09-5654 (MLC)
     Plaintiff,                   :
                                  :   AMENDED MEMORANDUM OPINION
     v.                           :
                                  :
VERIFONE HOLDINGS, INC.,          :
                                  :
     Defendant.                   :
_____:
```

**COOPER, District Judge**

Plaintiff, Heartland Payment Systems, Inc. ("Heartland")
commenced this action against defendant, VeriFone Holdings, Inc.
("VeriFone") alleging, <u>inter alia</u>, false advertising under the
Lanham Act, 15 U.S.C. § 1125(a).  (<u>See</u> dkt. entry no. 1, Compl.)[1]

Heartland moves to preliminarily enjoin VeriFone from, <u>inter
alia</u>, publishing or otherwise disseminating advertisements or
statements discussing Heartland, a pending patent infringement
action between Heartland and VeriFone Israel, Ltd. ("VeriFone
Israel"), Heartland's ability to provide support and service to
its customers, and whether "Heartland expects Heartland's
customers to contact VeriFone" for support.  (Dkt. entry no. 44,

_____

[1] The Complaint also asserts trademark infringement and
anti-cybersquatting claims, based on VeriFone's operation of a
website, http://heartland.verifone.com.  However, VeriFone has
made that address inoperable and moved its content to
http://freesupport.verifone.com instead, rendering the trademark
infringement and anti-cybersquatting claims moot for purposes of
this motion.

Proposed Preliminary Injunction Order.)[2]  VeriFone opposes
Heartland's motion for a preliminary injunction, contending that
the communications at issue are not "advertising" and that, in
any event, all of VeriFone's statements are true.  (Dkt. entry
no. 29, Def. Br.)  VeriFone further argues that the proposed
relief sought is unavailable under Federal Rule of Civil
Procedure ("Rule") 65.  (Id. at 2; dkt. entry no. 49, Def. 12-11-
09 Letter.)

    The Court has considered the papers submitted by the parties
and heard oral argument on December 7, 2009.  The Court hereby
issues its preliminary findings of fact and conclusions of law
with respect to Heartland's motion for a preliminary injunction
as required by Rule 52.  For the reasons stated herein, the Court
will deny that motion.

**BACKGROUND AND FACTUAL FINDINGS**

**I.   Plaintiff**

    Heartland is a corporation organized under the laws of
Delaware with its principal place of business in Princeton, New
Jersey.  (Compl. at ¶ 8.)  Heartland's business focuses primarily
on providing credit and debit card processing and payroll
solutions to more than 230,000 restaurant, hotel, and retail
merchants throughout the United States.  (Id.)  In conjunction
with these services, Heartland sells and rents point-of-sale

---

    [2] VeriFone Israel is a subsidiary of VeriFone.

terminals ("POS terminals"), products, and supplies.  (Id.)  A
significant portion of Heartland's customers use POS terminals
manufactured by VeriFone and accompanying software written by
VeriFone.  (Def. Br. at 5; see Compl. at ¶ 14 ("A majority of
Heartland's merchants depend on VeriFone products and support");
dkt. entry no. 36, Schramm Decl. for Purpose of Lodging
Transcripts, Ex. D, Carr Dep. 45:23-47:13 (estimation by
Heartland's CEO that between 35 and 45 percent of Heartland
merchants use VeriFone equipment); dkt. entry no. 49, Ex. C,
Complaint filed in Heartland Payment Sys. Inc. v. VeriFone
Holdings, Ltd., Dkt. No. L-2349-09 (N.J. Law Div. filed 9-16-09)
("Mercer County Complaint"), at ¶ 39 ("VeriFone is by far the
largest manufacturer of POS terminals stocked by Heartland.").)

## II.  Defendant

VeriFone is a Delaware corporation with its principal place
of business in San Jose, California.  (Compl. at ¶ 9.)
VeriFone's business focuses primarily on the design and
manufacture of POS terminals and the related software that runs
on those devices, which are located at cash registers, gas pumps,
and taxi cabs.  (Def. Br. at 4.)  VeriFone sells its POS
terminals both directly to customers, as well as to payment
processors like Heartland, who then sell or lease POS terminals
to its customers.  (Id.)  According to Heartland, "VeriFone is

the single largest supplier of POS terminals in the United States with over 60% of the market share."  (Compl. at ¶ 9.)

## III. Disputes Between the Parties

### A.   Relationship Between Heartland and VeriFone

Until recently, Heartland and VeriFone were engaged in licensing and other agreements whereby Heartland would provide direct support to Heartland customers using VeriFone-branded POS terminals, but VeriFone made necessary software updates, troubleshooting support, and replacement parts available to Heartland.  (Id. at ¶¶ 19-23; Def. Br. at 6.)  For instance, VeriFone trained Heartland staff in customer support, and a VeriFone representative was available to Heartland's customer support help desk when Heartland staff was unable to resolve a customer's problem arising with respect to VeriFone hardware and software.  (Def. Br. at 6-7; dkt. entry no. 29, Decl. of Robert Lopez ("Lopez Decl.") at ¶¶ 13-14; dkt. entry no. 29, Decl. of Peter Vaccaro ("Vaccaro Decl.") at ¶¶ 2-4.)

VeriFone was involved in Heartland's support of its customers by providing Heartland access to VeriFone products and parts for out-of-warranty repair; application software, system software, and operating system updates; notification of updates; support for application customization; and online support portals.  (Lopez Decl. at ¶¶ 10-19.)  Ultimately, however, Heartland maintains that it "is fully – and solely – responsible

4

for maintaining and troubleshooting the credit card processing system, including maintaining and servicing the POS terminals," and VeriFone generally has no direct contact with Heartland customers.  (Dkt. entry no. 1, Decl. of Steven Elefant ("Elefant Dec.") at ¶ 6.)

**B.   Heartland's E3 Project and Patent Infringement Suit**

The relationship between the parties began to break down when Heartland sought to develop POS terminal devices with an end-to-end encryption ("E3") system for additional security in transmitting retail customers' credit and debit card information to Heartland's payment processing network.  (Compl. at ¶ 24.) One of Heartland's technology vendors developed a prototype POS terminal with E3 technology, and Heartland has installed seven such prototype units in the United States.  (Compl. at ¶ 25.)

VeriFone Israel holds United States Patent No. 6,853,093, which is embodied by a device that self-destructs when tampering is detected.  Alleging that Heartland's prototype E3 device infringed on this patent, Verifone Israel brought an action against Heartland for patent infringement in the United States District Court for the Northern District of California on September 9, 2009.  <u>Verifone Israel, Ltd. v. Heartland Payment Sys., Inc.</u>, No. 09-4172-CRB (N.D. Cal. filed 9-9-09).  (Elefant Decl., Ex. A, Compl. in N.D. Cal. Patent Case; dkt. entry no. 29, Decl. of Douglas Bergeron ("Bergeron Decl."), at ¶¶ 3-4.)

VeriFone also decided at this time to discontinue any support it was not contractually required to provide to Heartland.  On October 30, 2009, VeriFone advised Heartland that it would not renew existing contracts with Heartland when those contracts expired, including certain maintenance and support contracts scheduled to expire at the end of December 2009. (Bergeron Decl. at ¶ 7; dkt. entry no. 29, Decl. of Joseph Schramm III ("Schramm Decl."), Ex. K., 10-30-09 Letter from Albert Liu, Senior Vice President and General Counsel of VeriFone, to Robert Carr, CEO of Heartland, stating VeriFone's intent "not to renew Heartland's existing maintenance and support contracts with VeriFone upon their expiration".)  For instance, VeriFone would no longer provide Heartland replacement parts for out-of-warranty POS terminals; would discontinue Heartland's access to newly issued software updates and releases, including updates and patches for the POS terminal operating systems, systems software, and application software; and would no longer make a Technical Systems Analyst available to Heartland.  (Lopez Decl. at ¶¶ 22-28.)

### C.   New Jersey State Court Action

Heartland responded by bringing an action against VeriFone on September 16, 2009, in the Superior Court of New Jersey, Law Division, Mercer County (the "Mercer County action").  Heartland Payment Sys., Inc. v. VeriFone Holdings, Inc., Dkt. No. L-2349-09

(N.J. Super Ct. Law Div. filed 9-16-09).  (Dkt. entry no. 49,
Def. 12-11-09 Letter, Ex. C, Mercer County Complaint).  Heartland
alleges in the Mercer County action that VeriFone, in retaliation
for Heartland's utilizing Asian technology vendors to produce E3
technology rather than VeriFone, sued Heartland for patent
infringement and cut off service and support to Heartland and its
customers.  (Mercer County Complaint at ¶ 4.)  Specifically,
Heartland alleges in the Mercer County action that VeriFone's
withdrawal of support left "Heartland's customers high and dry:
[VeriFone] has cut off supply of new hardware, cut off supply of
repair parts, cut off all technical support, and even refuses to
answer calls or emails from Heartland personnel. . . . [and] cut
off software developers that have relationships with Heartland."
(Id. at ¶ 7.)  The Mercer County action asserts causes of action
under New Jersey law for tortious interference with contracts and
prospective economic advantage as to both third-party vendors and
Heartland's customers (Counts I and II); tortious refusal to deal
(Count III); breach of contract (Count IV); breach of the implied
duty of good faith and fair dealing (Count V); unfair competition
(Count VI); and defamation and disparagement (Count VII).
(Mercer County Compl. at ¶¶ 108-146.)

     VeriFone Israel amended the Complaint in the Northern
District of California patent infringement action on October 13,
2009, to join VeriFone Holdings as a plaintiff and to request

declaratory relief as to each of the New Jersey state law claims raised by Heartland in the Mercer County action.  VeriFone Israel, Ltd. v. Heartland Payment Sys., Inc., No. 09-4172-CRB (N.D. Cal. Oct. 13, 2009), dkt. entry no. 9, Am. Compl. at ¶¶ 35-46.

**D.   Early November Press Releases**

VeriFone issued a press release at approximately 7:30 a.m. on November 3, 2009, titled "VeriFone to Offer Continuous Support to Heartland Merchants."  The press release was timed to coincide with Heartland's scheduled third-quarter earnings call.  (Compl. at ¶ 31; dkt. entry no. 1, Pl. Br. Supp. TRO and Prel. Inj. ("Pl. Br.") at 4.)  VeriFone's press release announced that VeriFone "will offer complete alternative support to merchants who are currently utilizing VeriFone payment solutions on Heartland Payment Systems' . . . network."  (Schramm Decl., Ex. L, 11-3-09 Press Release ("11-3-09 Press Release").)[3]  The press release further states:

> VeriFone is taking action to prevent any disruption to merchants after determining that the pending litigation over Heartland's continual infringement of a VeriFone patent is likely to impact Heartland's ability to maintain service levels with its customers.  VeriFone has informed Heartland that it will terminate its support relationships with Heartland, effective end of day December 31, 2009.

---

[3] The 11-3-09 Press Release is available at http://www.verifone.com/2009/verifone-to-offer-continuous-support-to-heartland-merchants.aspx.

"It is imperative that VeriFone merchants continue to receive support to accept card payments without any disruption.  VeriFone has a fiduciary duty to protect its intellectual property, but we have a thirty year reputation of quality that demands we protect our merchants first and foremost," said VeriFone CEO Douglas Bergeron.  "Our extensive support desk resources will allow VeriFone to efficiently provide customers with a high level of service and shield them from the impact of litigation.  We are making a special offer to provide this support free to all Heartland customers throughout the balance of their current Heartland processing agreement."

.  .  .

<u>Heartland merchants need to register for this free support before December 15, 2009 to ensure uninterrupted continuation of support</u>.  This offer is absolutely free and is made only to ensure that any future technical support issues can be resolved expeditiously by VeriFone."

If you are a Heartland customer with a VeriFone product, please register today.  To register online, go to http://freesupport.verifone.com.

(<u>Id.</u> (emphasis added).)[4]

The website http://freesupport.verifone.com urges Heartland customers to "Register for Free Technical Support from VeriFone" to "Avoid any Possible Support Issues during the Holidays." (Schramm Decl., Ex. O ("website").)  The website explains that "VeriFone and Heartland Payment Systems are currently in the midst of a patent dispute," and invites Heartland merchants to

---

[4] VeriFone advised the Court by letter dated December 16, 2009, that it had decided to extend its offer of free support to merchants who registered on or before December 31, 2009, and that VeriFone's website and other public statements referring to the December 15 cutoff date were being revised to reflect the new date.  (Dkt. entry no. 54.)

call VeriFone's customer support experts for help.  (Id.)  On the right side of the website, next to the explanatory text, is a "Merchant Registration" section with entry fields for the merchant's name, merchant identification number, merchant type,[5] terminal identification number and model, and the terminal phone number.  (Id.)  The registration form also seeks information as to whether the merchant owns, rents, or leases a POS terminal and asks for the merchant's contact information and the date the merchant's payment processing contract with Heartland ends.  (Id.)

The website contains three documents for download in addition to the November 3 press release:  "Heartland-VeriFone FAQs," "Open Letter to Merchants from Doug Bergeron, VeriFone CEO," and a press release dated 11-5-09, "Heartland Expects its Merchants to Contact VeriFone for Direct Support."

The "Heartland-VeriFone FAQs" explain that as of December 31, 2009, "VeriFone will no longer support Heartland users through Heartland" and that "[a]fter Dec. 31, Heartland will no longer have access to and be able to provide VeriFone support, maintenance and updates to the platforms, operating systems and software libraries on which the VeriFone terminals are reliant."

---

[5] The "Merchant Type" field is a drop-down list comprising the following options:  Retail, Restaurant, Petroleum/C-Store, Mail Order, Internet, Mobile, Lodging, Home-Based.

(Schramm Decl., Ex. N ("Heartland-VeriFone FAQs").)[6]  The Open
Letter advises that while VeriFone has decided to discontinue its
support relationship with Heartland, VeriFone "wants to ensure
continuous support of VeriFone devices for Heartland merchants,"
and is "offering FREE technical support to all Heartland
merchants using VeriFone devices."[7]  (Schramm Decl., Ex. M ("Open
Letter").)  The November 5, 2009 press release titled "Heartland
Expects Its Merchants to Contact VeriFone for Direct Support"
states that Heartland "has filed a court briefing in the Superior
Court of New Jersey saying it now expects its merchants using
VeriFone systems to contact VeriFone directly for support" and
quotes from Heartland's complaint filed on September 16, 2009, in
the Mercer County action.  (Schramm Decl., Ex. T ("11-5-09 Press
Release").)[8]  The press release also quotes VeriFone CEO Douglas
Bergeron as saying, "Merchants need to rely on VeriFone for
continuous support of their operating system, runtime libraries,
and in most cases their payment application."  (Id.)

_____

[6] The Heartland-VeriFone FAQs are available at
https://freesupport.verifone.com/files/Heartland_VeriFone_FAQ.pdf.

[7] The Open Letter is available at https://freesupport.
verifone.com/files/Open_Letter_to_Merchants.pdf.

[8] The November 5, 2009 Press Release is available at
http://www.verifone.com/2009/heartland-expects-its-merchants-to-
contact-verifone-for-direct-support.aspx.

Heartland responded to VeriFone's statements with a press release of its own, issued on November 3, 2009. (Schramm Decl., Ex. P.) Heartland's press release calls VeriFone's November 3 press release "a disingenuous attack" claiming that "Heartland is not able to support its customers that use VeriFone terminals . . . [and] VeriFone can." (Id.) Heartland's CEO, Bob Carr, states in the press release:

> Heartland is fully capable – and will continue to be
> fully capable – of servicing all of its customers.  In
> fact, VeriFone is not able to support our customers.
> They can't because our customers operate on our
> proprietary payment processing platforms.  Heartland is
> the only entity that can provide full service –
> including ongoing service of VeriFone terminals – to
> them.  This means our servicing of VeriFone-related
> issues is not – and will not be – impacted by
> VeriFone's false claims and unethical attempts to scare
> our customers.

(Id.)

### E.    False Advertising Actions in N.D. Cal. and D.N.J.

VeriFone and Heartland brought separate actions alleging false advertising under the Lanham Act in federal court on November 6, 2009.  Both actions arise out of the press releases issued on November 3, 2009.

Heartland served the Complaint in the instant action on opposing counsel at approximately 1:00 p.m. Eastern Standard Time on November 6.  (Dkt. entry no. 27, Pl. Opp'n Mot. Transfer at 6.)  At approximately 5:52 p.m. Eastern Standard Time that same day, VeriFone filed a complaint in the Northern District of

12

California.  (Id.)  See VeriFone Holdings, Inc. v. Heartland
Payment Sys., Inc., No. 09-5296 (N.D. Cal. filed 11-6-09), dkt.
entry no. 1, Compl. (raising claims under section 43(a) of the
Lanham Act for false advertising and sections 172000 and 175000
of the California Business & Professions Code, based on alleged
inconsistencies between Heartland's November 3, 2009 press
release and Heartland's complaint in the Mercer County action).[9]

This Court denied Heartland's application for a temporary
restraining order on November 9, 2009, and ordered VeriFone to
show cause why it should not be preliminary enjoined from making
the statements at issue.  (Dkt. entry no. 11.)  At the December
7, 2009 hearing, Heartland proffered a revised Proposed Form of
Order specifying the injunctive relief sought, and filed it
electronically at the Court's direction.  (Dkt. entry no. 44,
Proposed Preliminary Injunction Order.)  VeriFone has responded
to the revised Proposed Preliminary Injunction Order by letter

---

[9] VeriFone chose to bring a separate action in the Northern
District of California rather than add the Lanham Act claims to
its pending patent infringement action because it had already
amended the complaint in the patent infringement action once, to
add VeriFone Holdings and the declaratory judgment counts, and
would have to move separately for leave or obtain Heartland's
consent to amend the complaint a second time.  VeriFone moved to
have the patent infringement action and its Lanham Act action
treated as related cases in the Northern District of California,
but the presiding judge in the first-filed patent infringement
action denied the motion.  (Dkt. entry no. 23, Def. Br. Supp.
Mot. Transfer at 9 n.5.)  See VeriFone Israel Ltd. v. Heartland
Payment Sys., Inc., No. 09-4172-CRB (N.D. Cal. Nov. 18, 2009),
dkt. entry no. 31 (order denying motion to relate case 09-5296-
PJH to case 09-4172-CRB).

brief (dkt. entry no. 49), to which Heartland has replied (dkt. entry no. 51).  VeriFone filed a surreply.  (Dkt. entry no. 53.)

## CONCLUSIONS OF LAW

Heartland argues, <u>inter alia</u>, that VeriFone should be preliminarily enjoined from making four types of allegedly false statements: that (1) Heartland merchants may be impacted by the pending patent infringement litigation; (2) VeriFone will offer "complete alternative support"; (3) Heartland cannot support its customers after December 31, 2009, and VeriFone can; and (4) Heartland expects its merchants to contact VeriFone directly for support.  (<u>See</u> dkt. entry no. 33, Pl. Reply Br. at 3.) Heartland contends that it is likely to succeed on its Lanham Act claims because these statements are literally false.  (<u>Id.</u>)  In contrast, VeriFone argues, <u>inter alia</u>, that all of these statements are true, and that Heartland cannot make a showing of irreparable harm.  (Def. Br. at 3-4.)  The findings and conclusions set forth in this opinion are preliminary only, and based upon the state of the record at this stage in the litigation.  <u>See</u> Fed.R.Civ.P. 65(a).[10]  The parties have

_____

[10] The Court stated at the December 7, 2009 hearing that it appeared that factual disputes existed as to Heartland's ability to provide support to its customers using VeriFone devices after December 31, 2009, and offered the parties an opportunity for an evidentiary hearing.  (Dkt. entry no. 55, 12-7-09 Hr'g Tr. at 118:4-23.)  Heartland waived an evidentiary hearing.  (12-7-09 Hr'g Tr. at 119:23-120:2.)  VeriFone expressed a preference for having an evidentiary hearing and declined to waive it, but suggested that the Court could properly consider the papers

14

preserved all rights to present their disputes to a fact-finder for eventual adjudication on the merits.

## I.   Legal Standards Governing Preliminary Injunctions

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted). To obtain such interim relief, a movant must demonstrate both a likelihood of success on the merits and the probability of irreparable harm absent the injunction. Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Thus, in determining whether to issue a preliminary injunction, the Court must consider whether (1) the movant has shown a reasonable probability of success on the merits, (2) the movant will be irreparably injured by denial of the relief, (3) granting the preliminary relief will result in even greater harm to the nonmoving party, and (4) granting the preliminary relief is in the public interest. ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996); AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994); see The Nutrasweet Co. v. Vit-Mar Enter., Inc., 176 F.3d

---

before it.  (12-7-09 Hr'g Tr. at 120:4-121:13.)  Because no mutually agreeable date was available prior to December 31, 2009, to hold such a hearing, the Court makes these preliminary findings based on the record before it, without the benefit of an evidentiary hearing.

151, 153 (3d Cir. 1999).  The Court should issue an injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief."  AT&T Co., 42 F.3d at 1427 (citation omitted); see The Nutrasweet Co., 176 F.3d at 153 (noting that a plaintiff's failure to establish any one of the four elements renders a preliminary injunction inappropriate).

**A.  Reasonable Probability of Success on the Merits:
     The Lanham Act**

The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation." Bennington Foods LLC v. St. Croix Renaissance Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008).  In evaluating whether a movant has satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975).

Heartland contends that certain statements and assertions made by VeriFone violate the Lanham Act, 15 U.S.C. § 1125(a), which states in pertinent part:

> (1) Any person who . . . in connection with any goods
> or services . . . uses in commerce any word, term,
> name, symbol, or device, or any combination thereof, or
> . . . false or misleading description of fact, or false
> or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause
mistake, or to deceive as to the affiliation,
connection, or association of such person with
another person, or as to the origin, sponsorship,
or approval of his or her goods, services, or
commercial activities with another person, or

(B) in commercial advertising or promotion,
misrepresents the nature, characteristics,
qualities, or geographic origin of his or her or
another person's goods, services, or commercial
activities,

shall be liable in a civil action to any person who
believes that he or she is or is likely to be damaged
by such act.

15 U.S.C. § 1125(a).  To prove a Lanham Act violation, the

complaining party must show:

(1) the defendant made false or misleading statements
about the plaintiff's [or his own] product; (2) there
is actual deception or a tendency to deceive a
substantial portion of the intended audience; (3) the
deception is material in that it is likely to influence
purchasing decisions; (4) the advertised goods traveled
in interstate commerce; and (5) there is a likelihood
of injury to the plaintiff.

Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d

Cir. 2001).

A Lanham Act false or misleading statement may be proven in

one of two ways.  The plaintiff must show that "the commercial

message or statement is either (1) literally false or (2)

literally true or ambiguous, but has the tendency to deceive

consumers."  Novartis, 290 F.3d at 586.  If the plaintiff can

show literal falsity, "the court may grant relief without reference to the advertisement's impact on the buying public." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993).

> In analyzing whether an advertisement or product name is literally false, a court must determine, first, the unambiguous claims made by the advertisement. . . . , and second, whether those claims are false.  A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.

Novartis, 290 F.3d at 586-87 (quotations and citations omitted). However, "only an unambiguous message can be literally false." Id. at 587.  If the message is susceptible of more than one meaning, the plaintiff cannot assert literal falsity.  See id.

Where the plaintiff is unable to demonstrate that the complained-of statement is literally false, a Lanham Act violation may still be established by proving that the challenged statement makes a false or misleading claim and that a substantial portion of consumers actually understand the statement to be making that claim.  See Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994) ("Rorer"); Dentsply Int'l, Inc. v. Great White, Inc., 132 F.Supp.2d 310, 324 (M.D. Pa. 2000).  When the plaintiff chooses this evidentiary route because literal falsity cannot be shown, the plaintiff "must prove that [the statement] is deceptive or misleading, which depends on the

message that is conveyed to consumers." Rorer, 19 F.3d at 129.
The plaintiff therefore must produce evidence that consumers are
actually misled by the defendant's statements; speculation as to
how consumers could react is insufficient. See Highmark, 276
F.3d at 171. "[T]he success of [the plaintiff's] claim usually
turns on the persuasiveness of a consumer survey." Rorer, 19
F.3d at 129-130.

### B.    Irreparable Injury

"In general, to show irreparable harm a plaintiff must
demonstrate potential harm which cannot be redressed by a legal
or an equitable remedy following a trial.  Economic loss does not
constitute irreparable harm." Acierno v. New Castle County, 40
F.3d 645, 653 (3d Cir. 1994) (citations and quotations omitted).
"Grounds for irreparable injury include loss of control of
reputation, loss of trade, and loss of good will." Kos Pharms.,
Inc. v. Andrx Corp., 369 F.3d 700, 726 (3d Cir. 2004) (quotation
and citation omitted).  Further, irreparable harm must be of a
peculiar nature and must be incapable of pecuniary measurement.
See id. at 727; Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86,
91-92 (3d Cir. 1992).

### C.    Harm to Nonmoving Party

The Court must also analyze whether the defendant will
suffer irreparable harm if the preliminary injunction is granted.
Kos Pharms., Inc., 369 F.3d at 727.  If the Court finds that such

19

temporary relief may irreparably harm the defendant, then it must "balance the hardships" to ensure that the injunction does not harm the defendant more than denial of the injunction would harm the plaintiff.  Id.; see also Constr. Drilling, Inc. v. Chusid, 63 F.Supp.2d 509, 513 (D.N.J. 1999) (stating that courts must "balance the hardships to the respective parties" in determining whether to issue a preliminary injunction).  The "injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself." Kos Pharms., Inc., 369 F.3d at 728 (citation and quotations omitted).  Further, "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." Id. at 727 (quotation and citation omitted).  Thus, the Court should not consider financial damages when deciding whether to grant an injunction.  Id. at 728.

**D.   The Public Interest**

The public interest will almost always favor the plaintiff, if the plaintiff demonstrates both a likelihood of success on the merits and irreparable injury.  AT&T Co., 42 F.3d at 1427 n.8.

**II.  Legal Standards Applied Here**

**A.   Reasonable Likelihood of Success on the Merits**

For a preliminary injunction to issue, Heartland must first demonstrate a likelihood of success on the merits of proving that the four categories of statements to which it objects are

20

literally false or otherwise actionable under the Lanham Act.
Heartland has claimed only that the challenged statements are
literally false, and does not argue that the statements are
misleading.  (Pl. Br. at 15-16; Pl. Reply Br. at 3.)  Because
Heartland proffered no evidence that the challenged statements
have misled consumers, Heartland would be unable to proceed on
such a theory at this juncture.  Highmark, 276 F.3d at 171;
Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp., 642
F.Supp.2d 304, 316 (D. Del. 2009); Pharmacia Corp. v.
GlaxoSmithKline Consumer Healthcare, L.P., 292 F.Supp.2d 594, 600
n.2 (D.N.J. 2003) (stating that because the plaintiff had not
adduced any evidence of actual consumer confusion regarding the
contested statements, the court need not consider whether the
plaintiff had shown a likelihood of proving that the statements
had a tendency to deceive consumers).  The Court now considers
Heartland's likelihood of proving whether the challenged
statements made in VeriFone's press releases and other documents
are literally false.

> **(1)   "Heartland merchants may be impacted by the
> pending patent infringement litigation"**

Heartland objects to what it perceives as an assertion by
VeriFone that the patent infringement action may affect Heartland
customers.  Specifically, Heartland argues that two statements in
VeriFone's November 3, 2009 Press Release are literally false:
the subtitle to the press release, stating that VeriFone "Takes

21

Action to Ensure Pending Litigation over Heartland Infringement
of VeriFone Patent Does Not Impact Merchant Service Levels," and
the statement that VeriFone is offering support "after
determining that the pending litigation over Heartland's
continual infringement of a VeriFone patent is likely to impact
Heartland's ability to maintain service levels with its
customers."  (11-3-09 Press Release; Pl. Reply Br. at 4.)

　　Heartland contends that these statements are false because
the patent infringement action involves only thirty-seven
prototype terminals, of which only seven are in beta testing.
(Pl. Reply Br. at 4.)  According to Heartland, Heartland's
customers to whom VeriFone targeted the press release are not
users of the allegedly infringing device, and Heartland is not
currently selling or distributing the allegedly infringing
device; thus, Heartland concludes that there is no basis for
concluding that the relief sought in the patent infringement
action would affect Heartland's ability to support VeriFone POS
terminals already in use.  (<u>Id.</u>)

　　The Court disagrees with Heartland's conclusion that these
statements have a single, unambiguous meaning that is literally
false.  Heartland highlights VeriFone's statement that "continual
infringement of a VeriFone patent is likely to impact Heartland's
ability to maintain service levels with its customers."  (Pl.
Reply Br. at 5 ("The statement . . . creates the false impression

that there is something at issue in the Patent Lawsuit that is
going to stop Heartland from supporting its merchants.").)  The
Court's review of the complaint in the patent infringement action
confirms that the VeriFone POS terminals currently in use will
not be affected by the patent infringement action itself, which
concerns the next generation of POS terminals equipped with more
sophisticated security features.  However, the press release
clearly says, "<u>pending litigation over Heartland's continual
infringement</u> of <u>a</u> VeriFone patent is likely to impact"
Heartland's ability to maintain service levels with its
customers.  Thus, it is not the infringement itself or the relief
sought in the patent infringement action, as Heartland reads the
statement, but rather the fundamental dispute between the
parties, which VeriFone identifies as having origins in
Heartland's alleged infringement.

That the press release refers to "a" VeriFone patent, rather
than a specific patent relating to devices currently in use by
Heartland customers, further suggests a generic dispute rather
than the narrower interpretation espoused by Heartland.  The
press release itself provides context supporting the broader
interpretation, explaining that "VeriFone has informed Heartland
that it will terminate its support relationships with Heartland,
effective end of day December 31, 2009."  (11-3-09 Press
Release.)

Because the challenged statement is ambiguous, in that it is susceptible to differing interpretations, Heartland has not shown a likelihood of success in proving that it is literally false. See Novartis, 290 F.3d at 586-87.

### (2) "VeriFone will offer 'complete alternative support'"

Heartland claims that VeriFone's announcement in the first line of the November 3, 2009 Press Release that VeriFone "will offer complete alternative support to merchants who are currently utilizing VeriFone payment solutions on Heartland Payment Systems' . . . network" violates the Lanham Act. (11-3-09 Press Release; Pl. Br. at 16; Pl. Reply Br. at 6.) Heartland contends that "[t]he term 'complete alternative support' has only one possible meaning: that VeriFone can provide to Heartland's merchants all the support currently provided by Heartland without Heartland's assistance." (Pl. Reply Br. at 6.)

Heartland's understanding of VeriFone's use of the term "complete alternative support" is manifest in the Complaint. (See Compl. at ¶¶ 32-43.) Heartland argues that the statement is literally false because

> [a] customer who has a problem with its credit card processing service and calls VeriFone will not receive the necessary assistance. . . . A problem with a customer's service can come from a variety of sources, including the network (e.g., Visa or Mastercard), the processor, or the POS terminal. VeriFone has no expertise or ability to respond to and handle questions about Heartland's proprietary processing system.

24

(Compl. at ¶ 39.)   Thus, Heartland concludes that "VeriFone falsely states that Heartland's customer service can be replaced by or is interchangeable with VeriFone's customer service." (Id.)

Heartland identifies many problems that "only Heartland, and not an [sic] terminal supplier such as VeriFone, can resolve." (Dkt. entry no. 33, Supp'l Decl. of Michael English at ¶ 3.)[11] VeriFone does not dispute that it cannot resolve customers' problems that are related to payment processing rather than the

---

[11] According to English, such problems include, but are not limited to:

> (a) problems relative to Heartland's terminal application functionality; (b) problems relative to Heartland's products and services, including Heartland Merchant Center, authorization services and settlement and clearing services; (c) recovering or recreating a merchant's batch; (d) merchant assistance with void transactions; (e) research and solve merchant issues relative to transactions not clearing; (e) [sic] research and solve merchant issues relative to transaction reconcilement; (f) research and solve issues relative to pending transactions; (g) research and solve card processing issues relative to Visa, MasterCard, American Express, debit and other networks; (h) problems relative to fees associated with merchant processing; (i) research past transactions for billing issues; (j) management of returned transactions; (k) management and performance of merchant adjustments; (l) issuance of merchant monetary adjustments; (m) management and modification of merchant's funding method; (n) management of ACH/Exchange/Passport/Association rejected items and (o) development of custom/ad hoc reports.

(Supp'l Decl. of Michael English at ¶ 3.)

POS terminal itself.  (<u>See</u> Def. Br. at 24-25; <u>see also</u>
"Heartland-VeriFone FAQs" at 2 ("VeriFone will provide
operational support. . . . Merchants will continue to rely on
Heartland for reconciliation of payment issues.").)  However, the
Court disagrees with Heartland's proposition that VeriFone's
offer of "complete alternative support" has only "one possible
meaning."  (Pl. Reply Br. at 6.)

The logical extension of Heartland's interpretation of the
challenged statement is that VeriFone has decided to begin
offering payment processing services, in competition with
Heartland.[12]  Nothing in the press release itself suggests this
is the case.  The first line, which also contains the phrase
"complete alternative support," distinguishes between "VeriFone
payment solutions" – <u>i.e.,</u> the POS terminal – and "Heartland
Payment Systems' . . . network."  (11-3-09 Press Release.)  The
press release states that VeriFone's offer "is absolutely free
and is made only to ensure that any <u>future technical support
issues</u> can be resolved expeditiously by VeriFone."  (<u>Id.</u>
(emphasis added).)  VeriFone's offer of "complete alternative

_____

[12] Counsel for Heartland confirmed its acquiescence in this
extrapolation at oral argument, when the Court asked if, under
Heartland's interpretation, the challenged statements suggested
that "Heartland customers become VeriFone customers."  (12-7-09
Hr'g Tr. at 23:12-16.)  Heartland responded: "Well they are in
fact, Your Honor.  For the purposes of support, they're
suggesting that it's complete alternative support.  You don't
need Heartland to support your terminal <u>and your processing</u>."
(12-7-09 Hr'g Tr. at 23:16-21 (emphasis added).)

support" is narrowed in context by this language referring to "technical support."

Looking beyond the press release itself, the other challenged statements and documents at issue in this case support a narrower reading of the challenged claim than that urged by Heartland.  The "Open Letter from Douglas Bergeron" refers to "FREE technical support to all Heartland merchants using VeriFone devices. . . . For FREE VeriFone device support, please register before December 15, 2009." (Open Letter (emphasis added).)  Even more compellingly, the "Heartland-VeriFone FAQs" directly address the scope of the "support" VeriFone intends to provide to Heartland customers.  (See Def. Br. at 24; Heartland-VeriFone FAQs.)  The second question-and-answer listed on the "Frequently Asked Questions" states:

> Q: What kind of support does VeriFone provide to Heartland customers that they won't be able to get from Heartland?
>
> A: After Dec. 31, Heartland will no longer have access to and be able to provide VeriFone support, maintenance and updates to the platforms, operating systems and software libraries on which the VeriFone terminals are reliant.  Heartland routinely utilizes VeriFone support resources to troubleshoot issues with end-users.  The impact of not having access to those resources leaves Heartland severely handicapped in providing timely resolution to issues which may arise, leaving the merchant unable to process transactions efficiently. Also, a majority of Heartland's customers using VeriFone systems are using the VeriFone SoftPay application for transactions.

(Heartland-VeriFone FAQs.)

27

Considering VeriFone's offer of "complete alternative
support" in the full context of VeriFone's statements on the
issue, as the Court must, the Court finds Heartland's
interpretation of dubious support to a claim of literal falsity.
See Rorer, 19 F.3d at 129 ("A determination of literal falsity
rests on an analysis of the message in context.")  Moreover,
Heartland improperly conflates "support" with "services,"
undermining the plausibility of its interpretation.  (Pl. Reply
Br. at 7 ("Here, the term 'complete alternative support' can be
objectively and easily quantified – it is the ability to provide
all of the services that Heartland currently provides to its
merchants.") (second emphasis added)).  Thus, Heartland has not
shown a likelihood of success in proving that VeriFone's offer of
"complete alternative support" has an unambiguous meaning that is
literally false.  See Novartis, 290 F.3d at 586-87.

> **(3)  "Heartland cannot support its customers after
> December 31, 2009"**

The parties vigorously dispute the veracity of VeriFone's
suggestion, implicit in the challenged documents, that Heartland
will be unable to provide support to its customers after December
31, 2009, as a result of VeriFone's decision to discontinue
support previously provided to Heartland.  (Pl. Br. at 16; see
12-7-09 Hr'g Tr. at 112:20-113:5, 115:8-25, 117:16-25.)  A
literally false message "may be either explicit or conveyed by
necessary implication when, considering the advertisement in its

28

entirety, the audience would recognize the claim as readily as if it had been explicitly stated." <u>Novartis</u>, 290 F.3d at 586-87.

As an initial matter, the press release and other documents do not appear to unambiguously imply, as suggested by Heartland, that Heartland customers "will no longer be able to receive support from Heartland for VeriFone equipment after December 31, 2009." (Pl. Br. at 16.)  Rather, VeriFone's November 3 press release refers to possible impact on "merchant service <u>levels</u>." This implies a deviation in the degree of customer service and support, rather than a total unavailability of support.  (<u>See</u> Def. Br. at 26 ("VeriFone's offer of free support to Heartland's customers is not offered as a <u>replacement</u> for Heartland services but as a <u>supplement</u> to protect those customers so that they have the <u>same level</u> of support that was available to them before the change in relations between the companies.") (third emphasis added).)

The "Heartland-VeriFone FAQs" provide context for the assertion implicit in the November 3 Press Release.  That document explains that because Heartland "routinely utilizes VeriFone support resources to troubleshoot issues with end-users, . . . not having access to those resources leaves Heartland severely handicapped in providing timely resolution to issues which may arise, leaving the merchant unable to process transactions efficiently."  This statement, too, invokes the

29

possibility of a future change in the degree and timeliness of support.

VeriFone contends that its implicit claim that Heartland will no longer be able to provide support to its customers using VeriFone POS terminals is true because "Heartland will no longer be able to obtain replacement parts (for out-of-warranty terminals) or advice directly from VeriFone concerning the diagnosis and repair of VeriFone terminals as it has historically been able to do." (Lopez Decl. at ¶ 22.) Most significantly, "Heartland will lose access to newly issued VeriFone software updates and releases, including updates and patches for VeriFone terminal operating systems, systems software and application software, as well as VeriCentre upgrades." (Id. at ¶ 24.) According to VeriFone, failure to provide these updates and patches "increases the risk that VeriFone terminals deployed by Heartland may become vulnerable to breaches in security due to defects in the security mechanisms, the operating system and applications, or the hardware platform." (Id.)

VeriFone makes two arguments in support of its position that Heartland's ability to support its customers will be compromised by VeriFone's withdrawal of non-contractual support. First, VeriFone relies on Heartland's own assertions in the Mercer County action that "Heartland's merchants depend on VeriFone products and support" and that "VeriFone . . . provided Heartland

30

with the necessary technical support, troubleshooting procedures, and replacement and repair items to support those merchants." (Def. Br. at 20.)  Second, VeriFone points to Heartland's stated intention that it would replace its customers' VeriFone POS terminals with those of another manufacturer if Heartland is unable to fix a malfunctioning VeriFone device, as evidence that Heartland is in fact unable to "support" VeriFone devices without VeriFone.  (Id.)

The Mercer County action is replete with assertions of Heartland's dependence on VeriFone support in providing support to its customers.  (See, e.g., Mercer County Complaint at ¶ 39 ("VeriFone is by far the largest manufacturer of POS terminals stocked by Heartland.  For example, in July 2009, Heartland purchased over 2,000 replacement parts from VeriFone in the restaurant and retail markets alone.  Without these parts, Heartland would be unable to keep the VeriFone POS terminals operational and serving its merchants.") (emphasis added); id. at ¶ 43 ("Heartland also relies upon VeriFone for updates to the operating systems and communication servers, which are performed by VeriFone approximately once every six months."); id. at ¶ 120 ("VeriFone has . . interfered with Heartland's contracts and relationships with its customers by threatening to cease selling terminals and repair parts to Heartland and to cutoff [sic] support for VeriFone's products that were sold to Heartland's

31

customers, all of which are essential to a functioning POS system."); id. at ¶ 140 ("VeriFone . . . has wrongfully deprived Heartland of the benefit of its customer relations and has harmed customers by depriving them of the product and support obligations that Heartland agreed to provide.").)  These statements suggest that Heartland will have difficulty maintaining pre-dispute levels of service to Heartland customers using VeriFone POS terminals as customers' terminals develop problems in the future.  Heartland's pleadings in the Mercer County action, inconsistent with its position in this case, constitute non-conclusive evidence for the Court to consider in this case.  Fidelity & Deposit Co. of Md. v. Hudson United Bank, 653 F.2d 766, 777 (3d Cir. 1981).

        Heartland's claims that it will have no problem whatsoever supporting VeriFone devices, despite VeriFone's discontinuation of support, contradict its own claims in this case and in the Mercer County action.  The Court cannot find that VeriFone's implicit assertion to the contrary is literally false. Heartland's assertion in the instant case that "[a] majority of Heartland's merchants depend on VeriFone products and support" suggests an ongoing dependence and foreseeable adverse consequences upon withdrawal of such support.  (Compl. at ¶ 14.) Heartland is bound by this admission in the Complaint in this case.  See Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d

269, 275 (3d Cir. 2004).  Thus, Heartland has not shown a
likelihood of success in proving that VeriFone's suggestion that
Heartland will be unable to maintain the same level of support as
when VeriFone was providing support to Heartland is literally
false.

Heartland claims that VeriFone's invocation of December 31,
2009, as having some significance is literally false, because
"VeriFone admits that it terminated its support relationship with
Heartland months ago, long before the touted deadline with no
adverse impact on merchants."  (Pl. Reply Br. at 8.)  However,
the record before the Court indicates ambiguity as to the
significance of that date.  The challenged statements and
documents do not explicitly claim that Heartland customers will
start experiencing problems with their VeriFone POS terminals
that Heartland will be unable to fix, but rather suggest that the
level of service might be diminished due to VeriFone's decision
not to continue providing Heartland support.

Heartland argues that the December 31 date is insignificant
because VeriFone effectively "terminate[d] its support
relationships with Heartland" in late summer 2009.  (Accord
Schramm Decl. for Purpose of Lodging Transcripts, Ex. A, Lopez
Dep. at 80:3-12.)  While VeriFone stopped providing a dedicated
Technical Systems Analyst to Heartland in August 2009, it appears
that the individual previously employed in that capacity

nonetheless continued to provide, at least through November 2009, the type of support VeriFone has stated it intends to disavow in the future.  (Vaccaro Decl. & Exs. B, C, D & E; Lopez Dep. at 80:13-16.)  VeriFone proffers as an example of the significance of the date that "the current VeriCentre maintenance contract [between Heartland and VeriFone] has not yet been terminated and runs until December 31, 2009."  (Dkt. entry no. 49, Def. 12-11-09 Letter at 4.)  The Court finds no basis on this record for finding, as urged by Heartland, that "nothing" will happen after December 31, 2009, because VeriFone has shown that certain contracts will expire on that date and not be renewed, and evidence exists suggesting that some support persisted after late summer 2009, contrary to Heartland's assertion.

The Court therefore finds Heartland unlikely to succeed in showing literal falsity of VeriFone's implied assertion that VeriFone's withdrawal of support will affect Heartland's ability to maintain a high level of customer service and support.

### (4)  "Heartland expects its merchants to contact VeriFone directly for support"

VeriFone issued a press release on November 5, 2009, titled "Heartland Expects its Merchants to Contact VeriFone for Direct Support."  The press release states, "Heartland Payment Systems . . . has filed a court briefing in the Superior Court of New Jersey saying it expects its merchants using VeriFone systems to

contact VeriFone directly for support, contrary to a statement
Heartland issued November 3."

The press release quotes from paragraph 102 of the Mercer
County Complaint:

> VeriFone is critical in serving existing customers and
> troubleshooting for problems with the POS terminals and
> credit card processing.  Heartland provides
> troubleshooting and systems integration support for its
> merchants, which requires assistance from VeriFone.  <u>If
> Heartland were to be cut from any support, its
> customers would be forced to reach out directly to
> VeriFone</u>, which would result in a reduction of service
> to the customers and an erosion of Heartland's
> relationships with those customers.

(11-5-09 Press Release; Mercer County Complaint at ¶ 102
(emphasis added).)

Heartland protests VeriFone's reference to its claims in the
Mercer County Complaint on the basis that the paragraph quoted
was taken out of context.  Heartland points out that the quoted
paragraph was taken from a section of the Mercer County Complaint
titled "The Petroleum Industry," and is inapplicable to the
restaurant and retail merchants comprising most of the audience
of VeriFone's press releases and other documents.  (<u>See</u> dkt.
entry no. 33, Decl. of Charles Richardson (explaining
inapplicability of allegations contained in paragraph 102 of the
Mercer County Complaint and quoted in VeriFone's November 3, 2009
Press Release to Heartland's restaurant, retail, or lodging
customers).)

35

It is not clear to the Court that the distinction between Heartland's petroleum merchants and Heartland's retail and restaurant merchants is a significant one for purposes of the challenged statements.  The drop-down list options for "merchant type" on the http://freesupport.verifone.com registration form include, <u>inter alia</u>, "Retail," "Restaurant," and "Petroleum/C-Store."  VeriFone's November 3 Press Release appears to be aimed at these three types of merchants:  "VeriFone estimates that 75 percent of Heartland customers in the retail, restaurant <u>and petroleum</u> markets rely upon VeriFone systems.  VeriFone is encouraging merchants currently supported by Heartland to immediately begin making arrangements to receive technical support from VeriFone."  (Emphasis added.)  The Mercer County Complaint explains the fundamental functionality difference between "freestanding" point of sale terminals typically found in retail and restaurant outlets, and "integrated systems" that provide inventory functions in addition to point of sale capabilities found in gas stations.  (Mercer County Compl. at 4 n.1.)  However, the section of the Mercer County Complaint titled "The Petroleum Industry" (<u>id.</u> at 21) states that the relationship between Heartland and VeriFone is similar in the petroleum industry as it is to POS terminals generally.  (<u>Id.</u> at ¶ 92 ("Heartland has encountered similar resistance from VeriFone in the petroleum industry.").)

36

Counsel for Heartland conceded at oral argument that the
website is targeted broadly to different types of merchants,
including petroleum merchants, and that Heartland has "a small
segment of petroleum customers that they acquired in an
acquisition not too long ago."  (12-7-09 Hr'g Tr. at 27:7-16.)
Heartland then explained that "the vast majority of [Heartland's
merchants] are in retail and restaurants" as the basis for its
conclusion that VeriFone's reference to Heartland's position on
the VeriFone-Heartland relationship as to petroleum merchants is
incongruous.  (12-7-09 Hr'g Tr. at 27:17-18.)

As noted above, Heartland's admissions in the Mercer County
Complaint are properly considered by this Court.  The Court finds
that VeriFone's press release titled "Heartland Expects Its
Merchants to Contact VeriFone for Direct Support" is not
unambiguous in light of the context of the dispute between
Heartland and VeriFone, particularly with regard to the Mercer
County Complaint.  Because the statements in paragraph 102 of the
Mercer County Complaint could be construed as applicable to more
than just petroleum merchants, and based on those statements, one
could reasonably infer that Heartland does, in fact, expect its
customers to contact VeriFone directly "if Heartland were to be
cut off from any support," which has occurred, Heartland has not
shown a likelihood of success in proving literal falsity of the
statement.

37

**B.    Irreparable Harm, Balance of Hardships, and the Public Interest**

As explained above, this Court finds that Heartland has not shown a likelihood of success on the merits with respect to its Lanham Act claims.  With respect to the question of whether VeriFone created a false sense of urgency among Heartland's customers by claiming that it was withdrawing support on December 31, 2009, the Court finds that Heartland has not shown a threat of irreparable harm on account of that representation.[13] Accordingly, the Court need not address the remaining preliminary injunction factors.  AT&T Co., 42 F.3d at 1427; The Nutrasweet Co., 176 F.3d at 153.

### CONCLUSION

The Court, for the reasons stated supra, will deny Heartland's motion for a preliminary injunction.  The Court will issue an appropriate order.

                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge


**Dated:** December 29, 2009
**Deemed Filed, Nunc Pro Tunc:**  December 23, 2009

---

[13]  No current evidence suggests that any Heartland merchants with VeriFone terminals has left Heartland in favor of a competing payment processor.  Additionally, the challenged statements do not encourage Heartland merchants to switch from Heartland payment processing to either VeriFone or any other payment processor.  (See Def. Br. at 28; Open Letter from Douglas Bergeron.)

38